**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | **Case No.: 18-CR-00323 (ABJ)** |
| | : | |
| **v.** | : | |
| | : | |
| **WILLIAM PHINIZY** | : | |

**GOVERNMENT'S MEMORANDUM IN OPPOSITION**
**TO MOTION TO DISMISS INDICTMENT**

The United States respectfully submits this memorandum in opposition to defendant William Phinizy's motion to dismiss the indictment (Dkt. 10).

**BACKGROUND**

The defendant was charged by complaint on October 23, 2018, with three criminal violations: (1) 18 U.S.C. § 111(a)(1) (intimidating or interfering with designated officers); (2) 18 U.S.C. § 1361 (injuring or committing any depredation against property of the United States); and (3) 18 U.S.C. § 1752(a)(4) and (b)(1)(A) (engaging in physical violence against property in restricted buildings or grounds).

The charges arose from conduct that had occurred the day before. On the afternoon of October 22, 2018, the defendant intentionally drove his car into a vehicle entry barrier in the restricted area of the White House complex, causing more than $1,000 in damage to the barrier. The vehicle entry barrier was at a checkpoint manned by officers of the United States Secret Service, and is part of the restricted area that surrounds the White House. The defendant explained to Secret Service officers that he (1) had bugs inside of him, (2) was trying to get away from people

that were chasing him, and (3) believed that striking the barrier with his car was his last hope.  The defendant was placed under arrest.

In a post-arrest interview after waiving *Miranda* rights, the defendant stated that he has been diagnosed with post-traumatic stress disorder, depression, and traumatic brain injury, and that he takes medication for these conditions.  He explained that his trip to the White House began in Florida (where he lives), and that he had recently visited multiple hospitals there.  He said he traveled to a FBI facility in North Carolina to speak with law enforcement agents, but was denied access.  The defendant said he then traveled to the Washington, D.C., area and drove to the Pentagon to speak with law enforcement officials.  He said he generally wanted to tell law enforcement that he was being followed by a gang of people that had been hired by his father-in-law to kill him.  The defendant said he then went to the FBI building in Washington, D.C., but was told that the doors were locked.  He then traveled to the White House in what he described as a panic.  He said he knew that crashing into the White House vehicle gate would make a statement, and that he did it on purpose.  He said he did not want to hurt anyone, but that he wanted to speak with United States Secret Service personnel because he thought they would keep him safe from the people following him.  The defendant said he owns firearms that are located at his parents' residence, and that he previously owned handguns but they were taken away from him.  (Law enforcement recovered one piece of spent ammunition in his car.)  Law enforcement also learned that the defendant has a restraining order filed against him in Florida.

At the initial appearance on October 23, 2018, the government orally moved for pretrial detention and for a competency examination.  Magistrate Judge Robinson scheduled a detention hearing for October 26, 2018, and ordered that the defendant be interviewed by a psychologist

with the D.C. Department of Behavioral Health in an effort to learn whether he was competent to stand trial.

The grand jury returned a two-count indictment on October 25, 2018, charging the defendant with: (1) 18 U.S.C. § 1361 (injuring or committing any depredation against property of the United States); and (2) 18 U.S.C. § 1752(a)(4) and (b)(1)(A) (engaging in physical violence against property in restricted buildings or grounds). Each count carries a statutory maximum that includes up to ten years of incarceration.

The United States filed a motion on October 26, 2018, asking the Court to commit the defendant to the custody of the Attorney General for a psychological competency examination pursuant to 18 U.S.C. § 4241 (Dkt. 5). The motion also requested pretrial detention and provided a written explanation of the reasons for the request. The motion urged the Court to defer ruling on the request for pretrial detention until after the competency examination in the custody of the Attorney General, a competency hearing, and any necessary period of competency treatment because, among other reasons, "[w]here there are concerns about a defendant's competency to understand the proceedings, it is also difficult to assess in any meaningful way the defendant's risk of flight" (Dkt. 5 at 3).

At the hearing on October 26, 2018, counsel for the defendant urged Magistrate Judge Robinson to skip the competency examination in the custody of the Attorney General, and instead proceed straight to the competency hearing and issue a finding that the defendant was not competent to stand trial. The Department of Behavioral Health had not yet completed its report, however, and the examining psychologist was unavailable by phone at the time of the hearing. Magistrate Judge Robinson did not agree to the defendant's request, and instead continued the hearing to allow time for review of the psychologist's report.

The Department of Behavioral Health provided its report on October 30, 2018, and offered the opinion "with a reasonable degree of psychological certainty that the defendant is currently incompetent to stand trial."

At a hearing on October 31, 2018, Magistrate Judge Robinson granted the government's request for a competency examination in the custody in the custody of the Attorney General. The detention hearing was not held. Instead, Magistrate Judge Robinson "stayed" the motion for pretrial detention "pending resolution of Defendant's Competency" (Minute Order October 31, 2018). The detention hearing was continued to January 3, 2019. (Undersigned counsel does not recall the defendant lodging an objection to the request for pretrial detention until the January 3, 2019, hearing, but was unable to review the transcripts of the hearings to confirm this.)

## TRANSPORTATION FOR COMPETENCY EXAMINATION

The U.S. Marshals Service and the Bureau of Prisons began efforts to facilitate the competency examination shortly after Magistrate Judge Robinson issued the October 31, 2018, order. Undersigned counsel learned the following information from these two agencies. On November 1, 2018, the U.S. Marshals Service submitted information on the matter to the Bureau of Prisons. On November 2, 2018, the defendant was designated to a Bureau of Prisons facility for the psychological examination. The records regarding the place of designation are somewhat unclear, but it appears that the defendant may have been designated to Butner Federal Correctional Institution (Butner FCI) in North Carolina, and that the U.S. Marshals Service records mistakenly noted that the designation was to the New York Metropolitan Correctional Center (New York MCC) in New York. The U.S. Marshals Service was notified that the defendant's designation location was Butner FCI on or around December 17, 2018, and updated its records. On November 6, 2018, the U.S. Marshals Service initiated a request to move the defendant to New York MCC.

On November 14, 2018, the defendant was scheduled to be airlifted but was refused the airlift because of a rash on his body.  On December 4, 2018, the defendant was again scheduled to be airlifted, but the travel arrangements were cancelled due to a snow storm in the area.

On December 13, 2018, the defendant was airlifted to the Oklahoma Federal Transfer Center (Oklahoma FTC), a Bureau of Prisons facility.  Oklahoma FTC is the main hub of the Justice Prisoner and Alien Transportation System (JPATS).  On December 18, 2018, the defendant had contact with an individual who had chicken pox, and a medical hold was put in place temporarily keeping the defendant at Oklahoma FTC for medical reasons.

On January 11, 2019, the defendant was airlifted from Oklahoma FTC to the Atlanta United States Penitentiary (Atlanta USP).  On January 15, 2019, the defendant's scheduled travel to Butner FCI was refused by a bus lieutenant because the defendant did not have his paperwork.

On January 23, 2019, the defendant was transported from Atlanta USP to Butner FCI, where he had been designated for the competency examination.

**ARGUMENT**

There is no basis to dismiss the pending indictment for any purported violation of the Speedy Trial Act.

### A. *Legal Principles*

The Speedy Trial Act, 18 U.S.C. § 3161, sets out the framework for the time in which a criminal defendant must be brought to trial.  As a general matter, "in any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date . . . of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs."  18 U.S.C. § 3161(c)(1).

"If a defendant is not brought to trial within the time limit required by section 3161(c) as extended by section 3161(h), the information or indictment shall be dismissed on motion of the defendant." 18 U.S.C. § 3162(a)(2).

Section 3161(h) provides for certain periods of delay that "shall be excluded . . . in computing the time within which the trial of any such offense must commence."  18 U.S.C. § 3161(h).  These include "delay resulting from the fact that the defendant is mentally incompetent . . . to stand trial."  § 3161(h)(4).[1]

Section 3161(h) also excludes delay resulting from "other proceedings concerning the defendant," including: (1) "delay resulting from . . . any examinations . . . to determine the mental competency . . . of the defendant, § 3161(h)(1)(A); (2) "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion, § 3161(h)(1)(D); and (3) "delay resulting from transportation of any defendant . . . to and from places of examination or hospitalization, except that any time consumed in excess of ten days from the date an order . . . directing such transportation, and the defendant's arrival at the destination shall be presumed to be unreasonable," § 3161(h)(1)(F).  This list of "other proceedings" is "merely illustrative and not intended to be exhaustive," and should be read "broadly."  United States v. Garrett, 720 F.2d 705, 709-710 (D.C.Cir. 1983).  For example, a pretrial conference constitutes an "other proceeding[] concerning the defendant."  United States v. Van Smith, 530 F.3d 967, 975 (D.C. Cir. 2008).  See also Garrett, 720 F.2d at 710 (citing with favor the Judicial Conference Guidelines interpreting "other proceedings" to include "preliminary examinations under Rule 5.1, arraignment proceedings, pretrial conferences, depositions under Rule 15, and . . . bail hearings").

---

[1] The October 30, 2018, report from the Department of Behavioral Health provided the opinion that the defendant is mentally incompetent to stand trial, and the defendant did not dispute the report or offer any contrary evidence.

The period of delay attributable to "other proceedings" are described as "automatically excludable [because] they may be excluded without district court findings."  Bloate v. United States, 559 U.S. 196, 203 (2010).

B. ***Motions Have Been Pending Since October 23, 2018***

None of the 70 days within which trial must commence have elapsed because pretrial motions have been pending since the day of the defendant's initial appearance on October 23, 2018.  At the initial appearance on October 23, 2018, the government orally moved for pretrial detention and for a competency examination.  The government followed those requests with a written motion on October 26, 2018 (Dkt. 5).  Magistrate Judge Robinson granted the request for a competency examination, but has declined to rule on the request for pretrial detention until after the competency determination is complete.  The request for pretrial detention remains pending.

The government specifically urged Magistrate Judge Robinson to defer ruling on the motion until after more information is learned through the competency examination process, and the defendant did not object to this deferral.  Indeed undersigned counsel is unaware of any defense response to the request for pretrial detention until defense counsel sought pretrial release at a hearing on January 3, 2019; on that date Magistrate Judge Robinson continued the detention hearing to February 22, 2019, over a defense objection (Minute Entry, January 3, 2019).

The Speedy Trial Act "excludes the time resulting from 'any pretrial motion.'"  United States v. Hemphill, 514 F.3d 1350, 1357 (D.C. Cir. 2008).  The D.C. Circuit has described it this way -- "the phrase means what it says: any motion will toll the clock."  Id. (emphasis in original).  It makes absolutely no difference whether the motion was simple or complicated, or whether the motion actually caused delay.  See, e.g., United States v. Wilson, 835 F.2d 1440, 1443 (D.C. Cir. 1987) (refusing to consider whether a pretrial motion caused actual delay when considering

whether it excluded time under the Speedy Trial Act).  "Any motion may take time to resolve, and the Speedy Trial Act excludes that time from the seventy-day limit."  Hemphill, 514 F.3d at 1357. For these reasons, there is no consequence to Magistrate Judge's finding issued in a minute order last week that "no period of delay resulted from any proceeding with respect to the Government's motion for a Detention Hearing" (Minute Entry, January 31, 2019).  Indeed Magistrate Judge Robinson more than once opted for the wise course of deferring ruling on the motion for pretrial detention until after the competency examination.

The fact that motions have been pending since the initial appearance requires that the Court deny the defendant's motion to dismiss.  No further analysis is necessary.  We present below some additional bases for the exclusion of time, though none are necessary for the Court to resolve the motion.

## C. *The Competency Examination Is Excluded*

Several days are automatically excluded from the 70-day timetable under 18 U.S.C. § 3161(h)(1)(A) because the defendant was undergoing an examination to determine his competency to stand trial.  These include October 26-30, 2018, dates which include the examination by the Department of Behavioral Health through the issuance of its report.  These also include January 23, 2019, through the present, as the defendant is currently undergoing the examination at Butner FCI.

## D. *The Transportation To Butner FCI Was Reasonable*

The Court need not reach this issue because it is clear that the Speedy Trial Act has not been violated.  But though it took around 84 days for the defendant to arrive at Butner FCI, ten of those days are automatically excluded, and the time in excess of ten days was reasonable under 18 U.S.C. § 3161(h)(1)(F).  The details are laid out above, and if those facts are in dispute the Court

may resolve those disputes at an evidentiary hearing.  In short, numerous airlifts of the defendant

had to be cancelled due to legitimate medical issues, including the presence of a rash and exposure

to chicken pox.  Another airlift had to be cancelled due to a snowstorm in the area on December

4, 2018.  The absence of paperwork provides a reasonable basis to explain another cancelled effort

at transportation.  These reasons among others rebut the presumption of unreasonableness in §

3161(h)(1)(F).

### E.  No Basis For a Dismissal With Prejudice

Even if there were a violation of the Speedy Trial Act, there is no basis for the dismissal of

the indictment to be with prejudice.  In determining whether to dismiss with or without prejudice,

the Court should consider the following factors, among others: (1) the seriousness of the offense;

(2) the facts and circumstances of the case which led to the dismissal; and (3) the impact of a

reprosecution on the administration of this chapter and on the administration of justice.  18 U.S.C.

§ 3162(a)(2) .  Prejudice to the defendant is one of other factors the Court may consider.  United

States v. Bittle, 699 F.2d 1201, 1208 (D.C. Cir. 1983).  All of these factors would weigh in favor

of dismissal without prejudice, if dismissal of any sort were warranted.

This case is undoubtedly serious.  The defendant is charged by indictment with two crimes

each punishable by up to ten years in prison.  And each of the crimes charged are classified as

"crimes of violence," because they each involve  the "use . . . of physical force against the person

or property of another."  18 U.S.C. § 16.  The defendant is accused of engaging in these crimes

with a highly lethal device, an automobile.  The defense counsel's attempt to characterize these

crimes as minor must be rejected.

The facts and circumstances of this case do not warrant dismissal.  As explained above, the

government diligently made efforts at every stage to swiftly move the defendant to the designated

facility.  The defendant did not "languish" and he was not ignored; the delays were due to medical issues, weather issues, and other bureaucratic issues.  There was no bad faith on the part of the government.

The third factor weighs in favor of the government as well.  The United States Marshals Service and the Bureau of Prisons acted in good faith here to expeditiously move the defendant from the D.C. Jail to Butner FCI.  The defense has not alleged, and the Court has no evidence, to believe that any delay was either undertaken for or even inadvertently conferred any tactical benefit on the government.  Under these circumstances, it would not serve the administration of justice to dismiss the case with prejudice.

The administration of the Speedy Trial Act would similarly not be served by a dismissal with prejudice.  To the extent that any delays here were caused by structural issues inherent in running a nationwide network of prison transfers that has to take into account inmate security, weather and medical issues, and the needs of multiple facilities serving multiple districts across the country, dismissal of this case would not address any of those issues.[2]  Moreover, as numerous courts have recognized, dismissal without prejudice is not a toothless sanction.  See, e.g., United States v. Taylor, 487 U.S. 326, 342 (1988).  It requires the government to expend the resources to seek an indictment (or re-indictment) before bringing the defendant back before the Court, and could involve releasing the defendant from custody without supervision.

The defendant has not alleged any prejudice to his ability to defend against these charges as a result of the alleged delay.  The government has provided discovery to counsel, including police reports, a copy of the defendant's videotaped statement, and surveillance video footage of

---

[2]     The defendant notes a number of cases in this jurisdiction where he notes what he characterizes as delay.  The Court does not have the facts of those particular cases in front of it and should decide this case based on the facts on this record.  In any event, dismissal of this case, where no one acted in bad faith would serve no legitimate purpose.

the crimes.  Defendant has made no allegations that he has lost access to witnesses or evidence as a result of any delay or that he is stymied in pursuing his own investigations as a result of any delay.  Defense counsel has every ability to pursue an investigation into the charges in this case, and there is no indication that, in the event the defendant is rendered competent to stand trial, he will be hampered in his ability to defend against the charges.

## CONCLUSION

For these reasons and other presented at any hearing, the motion to dismiss should be denied.

Respectfully submitted,

JESSIE K. LIU
United States Attorney
D.C. Bar No. 472845

By: _____/s/_____
MICHAEL J. FRIEDMAN
Assistant United States Attorney
N.Y. Bar No. 4297461
555 4th St., N.W.
Washington DC 20530
(292) 252-6765
Michael.Friedman@usdoj.gov

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | **:** | |
| | **:** | **Case No.: 18-CR-00323 (ABJ)** |
| | **:** | |
| **v.** | **:** | |
| | **:** | |
| **WILLIAM PHINIZY** | **:** | |

**PROPOSED ORDER**

Having considered defendant William Phinizy's motion to dismiss, as well as any materials

presented in opposition thereto, **IT IS HEREBY ORDERED** that the motion be, and hereby is,

**DENIED**.


    **IT IS SO ORDERED**.


_____
The Honorable Amy Berman Jackson
United States District Judge