UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | *** PUBLIC *** |
| | ) | |
| v. | ) | Crim. Action No. 18-0323 (ABJ) |
| | ) | |
| WILLIAM J. PHINIZY, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

On October 22, 2018, defendant William J. Phinizy, a forty-nine-year-old decorated Army Sergeant, drove a car into a vehicle entry barrier at the White House, causing damage to the barrier. Agents of the United States Secret Service arrested him on the scene, charging him with assaulting, resisting, or impeding certain officers or employees in violation of 18 U.S.C. §§ 111(a)(1) and (b); destruction of government property in violation of 18 U.S.C. § 1361; and physical violence against property in any restricted building or grounds in violation of 18 U.S.C. §§ 1752(a)(4) and (b)(1). Compl. [Dkt. # 1]. At the time of his arrest, defendant stated to the Secret Service agent at the scene that "he was trying to get away from people that were chasing him, and that this was his last hope." Aff. of Wyatt Griffith [Dkt. # 1-1] ¶ 7. He "also stated that he had bugs inside of him." *Id.*

Following a forensic screening, on October 31, 2018, the Magistrate Judge committed defendant to the custody of the Attorney General for a competency evaluation at a federal facility pursuant to 18 U.S.C. §§ 4241 and 4247(b) and Local Criminal Rule 57.17(a)(14). Order [Dkt. # 7]; Min. Entry (Oct. 31, 2018). As a result of a number of distinct circumstances, it took approximately eighty-four days to transport defendant to the facility that would conduct the evaluation. Defendant then moved to dismiss the indictment on the grounds that his rights under

the Speedy Trial Act had been violated; he emphasized that pursuant to 18 U.S.C. § 3161(h)(1)(F), a delay for purposes of transportation that exceeds ten days is presumed to be unreasonable. Def.'s Mot. to Dismiss Case for Speedy Trial Act Violation [Dkt. # 10] ("Def.'s Mot.") at 5.[1]

The Court has now reviewed the entire record of materials submitted by both parties. While the government has not adequately justified all of the delays and errors made along the way, the Court finds that some of the delays were reasonable and should be excluded from the Speedy Trial calculation, and the arithmetic that arises out of this analysis leads to the conclusion that the seventy days has not yet expired. Therefore, the motion to dismiss will be denied.

## BACKGROUND

On October 23, 2018, during defendant's initial appearance in front of a Magistrate Judge, the government moved for temporary detention (three-day hold) and for a forensic screening to be conducted by the Department of Behavioral Health. Min. Entry (Oct. 23, 2018). The motions were granted. *Id.* On October 25, 2018, the grand jury returned an indictment charging defendant with destruction of government property and physical violence against property, but not with the assault on the officers. Indictment [Dkt. # 4]. The next day, the Court continued the arraignment to October 31, 2018, because the Department of Behavioral Health had not completed its forensic screening. *See* Min. Entry (Oct. 26, 2018). The government then moved for pretrial detention and to commit defendant to the custody of the Attorney General for a full competency evaluation. Gov.'s Mem. in Supp. of Pretrial Detention and for Competency Hearing [Dkt. # 5] ("Gov.'s Pretrial Mot."). On October 30, 2018, the Department of Behavioral Health submitted the forensic

---

1     Defendant was in custody at the time the motion was filed, but on February 26, 2019, defendant was released to the third-party custody of his parents. *See* Order Setting Conditions of Release [Dkt. # 17] ("Conditions of Release") at 2.

2

screening report to the Court, *see* Forensic Report [Dkt. # 6], and the next day, the Magistrate Judge granted the government's motion to commit defendant to the custody of the Attorney General for a psychological competency evaluation. Min. Entry (Oct. 31, 2018). The Magistrate Judge stayed the motion for pretrial detention pending the resolution of the question of defendant's competency. *Id.*

On January 21, 2019, defendant moved to dismiss the indictment based upon a violation of the Speedy Trial Act. *See* Def.'s Mot. Defendant asserted that eighty-seven days had passed since the Magistrate Judge had ordered that he be transported for the competency evaluation,[2] and he argued that since he had not been brought to trial within the seventy-day time period required by the Speedy Trial Act, the case must be dismissed. *Id.* at 5, citing 18 U.S.C. § 3161.[3]

In its opposition to the motion, the government took the position that there had been no Speedy Trial Act violation because a motion for pretrial detention had been pending since defendant's first appearance, and the Speedy Trial Act excludes the time resulting from "any pretrial motion." Gov.'s Opp. to Def.'s Mot. [Dkt. # 13] ("Gov.'s Opp.") at 7. The government

---

2 Defendant originally argued that eighty-seven days had elapsed. Def.'s Mot. at 5. But in the supplement to his motion, defendant contends that eighty-four days have elapsed. Def.'s Suppl. in Supp. of Mot. to Dismiss [Dkt. # 59] ("Def.'s Suppl.") at 1. As explained below, the Court agrees that eighty-four days have elapsed.

3 The Magistrate Judge originally stayed the hearing on the detention motion pending the results of the competency examination. Min. Order (Feb. 22, 2019). The Court vacated the stay, Min. Order. (Feb. 25, 2019), and the Magistrate Judge then assigned to the case conducted the hearing on February 26. *See* Min. Entry (Feb. 26, 2019). At that time, the Magistrate Judge had the benefit of a letter summarizing the outcome of the examination but not the full report. The motion was denied, and defendant was released to the third-party custody of his parents in North Carolina on the conditions that he stay away from the White House complex in Washington, D.C. and that he obtains mental health treatment and comply with all treatment recommendations and protocols. Conditions of Release at 2.

also pointed out that defendant did not formally enter his not guilty plea until February 26, 2019, and it argued that under the Act, the Speedy Trial clock did not begin to run until that time. *See* Gov.'s Response to Court Order [Dkt. # 18] ("Gov.'s Resp.") at 3. Finally, the government maintained that the time it took to transport defendant to the competency evaluation was reasonable and should be excluded from the Speedy Trial Act calculation. Gov.'s Opp. at 8–9.

On March 18, 2019, the Court issued an Order rejecting the government's first two contentions. Order [Dkt. # 29]. The Order noted that while under the Speedy Trial Act, any delay "resulting from" a pretrial motion may be excluded, the delay in transporting defendant to a federal facility while the detention motion was pending did not result from the motion. *Id.* at 3. The Court further explained that while the entry of a not guilty plea triggers the applicability of the Speedy Trial Act, the date the plea is entered is not the "start date" for purposes of calculating how many days have passed. *Id.* at 3–4. In connection with the determination of the reasonableness of the delay, the Court ordered the government to submit any records substantiating the asserted grounds for the delay by March 22. *Id.* at 5.

Over the week of March 22, 2019, the government submitted twelve exhibits. Gov.'s Response to Mar. 18, 2019 Court Order [Dkt. # 33]; Gov.'s Suppl. [Dkt. # 35]. At a status conference on March 25, the Court indicated its intention to rule based on the record before it, but the defense requested an opportunity to file an additional submission in June addressing the periods of delay in more detail. On June 5, 2019, defendant submitted a supplement to his motion to dismiss, arguing that the time it took to transfer defendant to his competency evaluation was unreasonable. Def.'s Suppl. at 3. The government replied to this supplement on June 14, 2019. Gov.'s Reply to Def.'s Suppl. [Dkt. # 62] ("Gov.'s Reply").

## ANALYSIS

The Speedy Trial Act states:

> In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.

18 U.S.C. § 3161(c)(1).

There are various reasons why delays may be excluded from the computation of the seventy days. For example, "[a]ny period of delay resulting from other proceedings concerning the defendant, including but not limited to – delay resulting from any proceeding, including any examinations, to determine the mental competency or physical capacity of the defendant" may be excluded. § 3161(h)(1)(A). In addition, "delay resulting from transportation of any defendant from another district, or to and from places of examination or hospitalization" is excludable, "except that any time consumed in excess of ten days from the date an order of removal or an order directing such transportation, and the defendant's arrival at the destination shall be presumed to be unreasonable[.]" § 3161(h)(1)(F).

Furthermore, "[i]f a defendant is not brought to trial within" seventy days, taking into account the exclusions of time permitted by § 3161(h), "the information or indictment shall be dismissed on motion of the defendant." § 3162(a)(2). When considering "whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice." *Id.*

On October 25, 2018, the grand jury returned defendant's indictment. Indictment. This date triggers the Speedy Trial Act clock but does not count towards the calculation.[4] *United States v. Stoudenmire*, 74 F.3d 60, 63 (4th Cir. 1996) (holding that the day of the event that triggers the clock is not included in the calculation; "the clock begins to run the following day"). From October 26 to October 30, the Department of Behavioral Health conducted its examination of defendant and on October 30, it provided the Court with a report ███████████████████████████████ ███████. Forensic Report. Since these days were dedicated to an examination of defendant to determine his mental competency, they are properly excluded. 18 U.S.C. § 3161(h)(1)(A).

On October 31, 2018, the Magistrate Judge granted the government's motion for a full competency evaluation and ordered that he be committed to the custody of the Attorney General for placement in a suitable federal facility. Order Committing Defendant to the Custody of the Attorney General [Dkt. # 7]. Because the days preceding October 31 are properly excluded, it is from this date that the Court calculates how many days have elapsed under the Speedy Trial Act. The parties also start the calculation on this date. *See* Def.'s Suppl. at 1–2. (starting calculation on October 31); Gov.'s Opp. at 8 (asserting that October 26 to October 30 is excluded, and it took eighty-four days to transport defendant to the evaluation).

On November 1, 2018, the U.S. Marshals Service submitted information concerning the Magistrate Judge's order to the Bureau of Prisons, and the next day, defendant was designated to the Federal Correctional Institution ("FCI") in Butner, North Carolina, but the Marshals mistakenly thought he was designated to the Metropolitan Correctional Center in New York

---

4    Defendant appeared in front of a judicial officer on October 23, 2018. Min. Entry (Oct. 23, 2018). The indictment was filed two days later, on October 25, 2018. Indictment. The Speedy Trial Act states trial must commence within seventy days from the filing of the indictment or from the date defendant appeared in front of a judicial officer, whichever is later. 18 U.S.C. § 3161(c)(1). Therefore, the date of the filing of the indictment controls.

("MCC NY"). Gov.'s Opp. at 4. On November 6, the U.S. Marshals Service requested that the defendant be moved to New York. *Id.* He was scheduled to be airlifted on November 14, 2018, but the Marshals refused to transport him because he had a rash on his body. *Id.* at 5. He was not cleared to travel until December 6, 2018. Ex. A to Gov.'s Opp. [Dkt. # 34-1] at 1.

On December 10, defendant was scheduled to be airlifted again, but there was a snow storm in the area and all travel was canceled. *See* Ex. G to Gov.'s Opp. [Dkt. # 33-4] at 1–2. Defendant was airlifted to Oklahoma Federal Transfer Center ("FTC") on December 13, and on December 17, the U.S. Marshals Service corrected its designation from MCC NY to FCI Butner. *See* Gov.'s Opp. at 4–5.

On December 18, defendant was exposed to chicken pox, and pursuant to Bureau of Prisons ("BOP") policy, he was quarantined for twenty-one days. *See* Ex. D to Gov.'s Opp. [Dkt. # 33-2] at 1. That quarantine was lifted on January 8, 2019, and on January 11, he was airlifted from Oklahoma to Atlanta Penitentiary. *Id.*; Gov.'s Opp. at 5. On January 15, defendant was supposed to board a bus to FCI Butner, where the examination was to be conducted, but a bus lieutenant refused to let him board because he did not have the necessary paperwork in his possession. Gov.'s Opp. at 5. Finally, on January 23, 2019, defendant arrived at Butner for his evaluation. *Id.*

In sum, eighty-four days elapsed between October 31, 2018 and January 23, 2019, and according to the statute, any time in excess of ten days is presumed to be unreasonable. 18 U.S.C. § 3161(h)(1)(F). Thus, the government has taken the approach that it is required to justify only seventy-four days. *See United States v. Wasik*, 956 F. Supp. 2d 175, 178–79 (D.D.C. 2013) (where the delay was twenty days, ten days were automatically excluded from the calculation, but ten were deemed presumptively unreasonable and could not be excluded).

The government contends that four periods of time, amounting to fifty-two of the days, are reasonable and should be excluded from the Speedy Trial calculation:

(1) the twenty-two days between November 14 and December 6, when defendant was not cleared to travel due to a rash on his body;

(2) the three-day delay due to inclement weather between December 10 and December 13;

(3) the twenty-one days between December 18 and January 8, when defendant was quarantined for exposure to chicken pox; and

(4) the six-day delay due to missing paper work between January 15 and January 21.

Gov.'s Reply. at 3–4. The government offers no explanation for any of the other delays that account for the remaining 32 days of the time period between October 31 and January 23; therefore, the Court cannot find any of them to be reasonable. But according to the government, since the statute permits that up to ten days may be expended on defendant's transportation, only twenty-two of the seventy days have elapsed and defendant's Speedy Trial rights have not yet been violated.

Defendant points to section 3161(h)(1)(F) and argues that the Speedy Trial Act requires that a defendant must be transported within ten days, and that the statute was violated since the government did not do so – or point to circumstances that justified its failure to do so – within the first ten days after the examination was ordered. *See* Def.'s Suppl. at 5 ("No portion of the delay that followed can be excluded from the STA calculations based on circumstances that occurred after the ten days from the date of the order . . . . The statute does not permit the government to exclude portions of the delay that occurred after the ten-day period or avoid the presumption of unreasonableness for a delay beyond ten days based on events that occurred after the ten-day period."). But the defense does not point to any case authority that has adopted this interpretation of the provision. Moreover, defendant's reading is not consistent with the text of the Act, which

simply states that "*[a]ny* period of delay resulting from other proceedings concerning the defendant," including "delay resulting from transportation" to the place of examination "*shall be excluded,*" "except that any time consumed in excess of ten days from the date [of] . . . an order directing such transportation, and the defendant's arrival at the destination shall be presumed to be unreasonable." 18 U.S.C. § 3161(h)(1)(F) (emphasis added). The presumption of unreasonableness certainly applies in this case, but the government may rebut this presumption by offering an explanation for the delay. *See United States v. Noone*, 913 F.2d 20, 26 (1st Cir. 1990). But the presumption of unreasonableness applies to *any time consumed* in the transportation that *exceeds* ten days, and there is no requirement that absent an explanation for the lapse during the first ten days, no other delays may be justified.

Thus, the Court is required to determine the reasonableness of the four periods for which the government has offered an explanation. The Court agrees that a flight delay due to weather conditions was reasonable, but only one day of delay is supported by the record. *See* Ex. G to Gov.'s Opp. [Dkt. # 33-4] at 1–2 (email from Catherine Beard, a Transportation Specialist, who confirmed that inmate travel was suspended on December 10, 2018). The government has not shown why an additional two days were needed after the airlift was canceled on December 10. *See Noone*, 913 F.2d at 26 (finding that unexplained delays do not rebut the presumption of unreasonableness); *see also United States v. Taylor*, 821 F.2d 1377, 1384 (9th Cir. 1987), *rev'd on other grounds*, 487 U.S. 326 (1988) (finding that a delay to accommodate the U.S. Marshals Service, in its desire to effect economical transportation of prisoners in larger groups, was unreasonable). And the Court agrees with defendant that the six-day delay due to missing paperwork does not rebut the presumption of unreasonableness; the logistics of the defendant's transportation were within the control of the U.S. Marshals and surely not the defendant himself.

*See United States v. Bauer*, 286 F. Supp. 2d 31, 34 (D.D.C. 2003) (finding unreasonable a delay caused by a mistake in paperwork); *United States v. Jervey*, 630 F. Supp. 695, 697 (S.D.N.Y. 1986) (finding "ordinary institutionalized delay is not an excuse," and when the Speedy Trial Act "was passed Congress knew all about the customs and practices of the prison bus").

As to the delay caused by the exposure to chicken pox, the Court finds that the twenty-one-day delay was reasonable. The government submitted exhibits confirming that defendant was part of the inmate population at the Oklahoma FTC that was exposed to chicken pox, and pursuant to BOP policy, he was quarantined for twenty-one days. *See* Ex. D to Gov.'s Opp. [Dkt. # 33-2] at 1 (email from Oklahoma FTC Clinical Director, George R. Petry, M.D., confirming defendant's exposure and quarantine); Ex. F. to Gov.'s Opp. [Dkt. # 33-3] ("BOP VZV Infections Policy") at 15 (designating quarantine period as twenty-one days). Defendant urges the Court to deem the time to be unreasonable because BOP did not adhere to its internal policies governing infectious diseases. He asserts that the policy states that any person who has had contact with chicken pox must be tested for immunity; defendant was not tested; and if he had been tested, he would have been cleared more expeditiously. Def.'s Suppl. at 8–10. But the policy does not state that every inmate exposed to the chicken pox *must* be tested for immunity. Rather, the policy states that inmates cannot be discharged or moved until immunity is confirmed *or* the twenty-one-day

incubation period has elapsed.[5] The government has supplied an email from Chad Ralls, the Infection Control Coordinator from the FTC in Oklahoma, who explains that due to staffing shortages and resources involved, the facility was unable to perform individual blood tests on all of the inmates who were exposed, which was over ninety people. Ex. H to Gov.'s Opp. [Dkt. # 35-1] ("Due to staffing shortages we were not able to go draw labs on 90 something people so our clinical director thought it best to wait out the 21 day varicella incubation period before he allowed inmates to move."); *see also* Ex. A. to Gov.'s Opp. at 2 (███████████████████████████████████████████████████). While the adoption of another approach might have been faster and more desirable, it was not *unreasonable* for prison officials faced with a potential outbreak of a communicable disease to decide to wait

---

5     The Policy states:

> Housing unit contacts and other identified contacts with "significant exposure" who are scheduled to be transferred to another correctional facility or to Residential Reentry during their incubation period shall not be moved until it has been determined that the contact has confirmation of immunity (i.e., VZV IgG positive). Varicella contacts should be placed on "Medical Hold" and not be transferred until 21 days after their exposure ended or until a positive IgG result is obtained.

BOP VZV Infections Policy at 15. In addition, the government submitted an email from the Regional Infectious Disease Specialist for the Bureau of Prisons to the Oklahoma FTC, outlining recommendations sent to the Oklahoma FTC regarding the chicken pox outbreak. The email also indicated that the Oklahoma FTC did not

> complete mass lab draws due to the incubation period and the resources involved. If inmate movement was necessary, we completed lab draws (varicella IgG) as needed to allow inmates to move only if notified by Receiving and Discharge (R&D) staff the inmate was required to be transported. If Health Services was not made aware of the impending transfer, the Varicella IgG was not completed.

Ex. C to Gov.'s Opp. [Dkt. # 33-1] at 1–2.

out the incubation period, rather than to expend the resources to test every individual for immunity. Indeed, the record does not reflect how long it would have taken to gather the samples and obtain the results, so while defendant is proceeding on the assumption that it would have been fewer than twenty-one days, we do not know if it would have taken one, five, ten, or even fifteen days. Here, exposure to an infectious disease is an extraordinary event and, therefore, the twenty-one-day quarantine was reasonable.

Thus, pursuant to section 3161(h)(1)(F), out of the eighty-four days that have elapsed, the Court will exclude ten days of permissible delay resulting from the transportation of defendant to the place of examination from the Speedy Trial calculation, and, of the days consumed in excess of the ten days, it finds that the government has rebutted the presumption with respect to one day for the weather delay and twenty-one days for the quarantine. In other words, without considering or excluding any of the twenty-two days attributed to defendant's skin condition, thirty-two of the eighty-four days have been excluded. This means that only fifty-two days, and not seventy, have elapsed, and the Speedy Trial Act has not been violated.

Although based on these findings, the Court is not required to dismiss the indictment, it will also address the reasonableness of the twenty-two-day delay between November 14 and December 6 that occurred when the transporting officials were alarmed by their observation of a rash on defendant's arms and legs. Defendant argues that this delay was not reasonable because the government had become aware of the defendant's skin condition before he was scheduled to travel; defendant was medically evaluated at the D.C. Jail; and a skin condition was noted in late October. Def.'s Suppl. at 6–7; *see also* Ex. 1 to Def.'s Suppl. [Dkt. # 61-1] at 5 (█████████ █████████████████████ ); Ex. 2 to Def.'s Suppl. [Dkt. # 61-2] at 3 (█████████ █████████████████████████████ ). Furthermore, on November 8, 2018,

defendant was medically cleared for federal transfer. Ex. 3 to Def.'s Suppl. [Dkt. # 61-3] at 6. But, when defendant arrived at Piedmont Regional Jail, his paperwork did not contain any reference to the skin condition. Ex. A to Gov.'s Opp. at 1. The officers present at the flight line had no way to verify whether the condition was infectious, and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. J to Gov.'s Opp [Dkt. # 36-1] ("Medical Scratch Rpt.") at 1. Therefore, defendant was turned away for travel, and he was not cleared to travel until December 6. Gov.'s Reply at 3–4.

Because the transport officials had not been provided with the documentation explaining defendant's troubling skin condition, and given defendant's own description of the cause of the rash (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮), it was not unreasonable for the officers immediately responsible for his transportation to pause and make further inquiries as to the potentially infectious nature of the rash. *See* Ex. A to Gov.'s Opp.; Medical Scratch Rpt. at 1. But, because defendant had already undergone an examination, after which he had been cleared to travel, Ex. 3 to Def.'s Suppl. at 6, it was not reasonable for the government to take more than three weeks to resolve this issue. The Court finds that the government should have been able to ascertain that there was medical information about the condition available and determine whether anything had changed within a week, and it will exclude only seven more days from the Speedy Trial calculation. This means that thirty-nine of the eighty-four days that have elapsed have been excluded, and that forty-five, but not all, of the statutory seventy days have been spent. But, as noted above, even if the Court were to find none of the days attributable to the rash to be reasonable and excludable, it would still not be required to dismiss the indictment.

## CONCLUSION

For the reasons set forth above, defendant's motion to dismiss [Dkt. # 10] is **DENIED**.

**SO ORDERED**.

AMY BERMAN JACKSON
United States District Judge

DATE: June 21, 2019